No. 12,540.

MILTON McGRAW vs. TEXAS & PACIFIC RAILROAD COMPANY.

1. The switching of cars in the night-time on the main tracks of a railroad, with no lights displayed, or other precautions used to warn approaching trains of the obstructed track, resulting in the collision with the obstructing cars of a freight train dispatched with no notice or warning of the obstruction, will be deemed negligence in the railroad company, subjecting it to damages caused by the collision.

2. Nor is the liability of the company at all lessened because the main track obstructed is within what are termed yard limits, extending eight hundred feet and over which all trains must pass, and such obstructions menacing such trains unless proper precautions are employed.

APPEAL from the Civil Judicial District Court for the Parish of Orleans. *Monroe, J.*

*Joseph N. Wolfson* (*J. F. Pierson* and *T. M. Gill* of Counsel) for Plaintiff, Appellant.

*Howe, Spencer & Cocke* for Defendant, Appellee.

Argued and submitted January 27, 1898.
Opinion handed down March 7, 1898.
Rehearing refused April 18, 1898.

The opinion of the court was delivered by

MILLER, J. The plaintiff appeals from the judgment dismissing his suit for damages caused by bodily injuries he claims to have sus-

tained from the collision of the locomotive engine of which he was a fireman pulling one of defendant's freight trains, with a train of cars placed on the tracks by defendants' agents. The petition alleges the collision was due entirely to the gross negligence for which defendants are responsible, and the answer is the general issue, and the averment that the negligence, if any, was that of defendant or his fellow-servant for which defendants are not liable.

The train that collided with the cars placed on the tracks, as we understand the testimony, having the right of way except of passenger trains, was dispatched at a late hour of night from the depot or yard opposite the city to Boyce, Louisiana; proceeding on its route the train consisting of thirty-four cars, encountered the cars placed on the track by the switch engine engaged in transferring cars to defendants' yard, and it is claimed the collision occurred in the yard limits; the engineer's testimony is that his train was running about eight or ten miles an hour; that five of the eight cars with air brakes with which his train was provided had been cut out, of which he had no knowledge until the train had started, and there is no substantial variance in the testimony that the cars blocking the track were perceived but a few moments before the collision, and too late for its avoidance; the quick apprehension of that which must have occurred prompted the exclamation from the engineer: "We are in for it," and he as well as the plaintiff jumped from the engine, he thereby receiving the injuries of which he complains, and the jump, under the testimony, was none too soon. It is claimed by the defendants that the collision occurring in what are termed yard limits, the rule of the company was for trains to stop at the bridge west of these limits, and go through at reduced speed, and the neglect of the engineer, the fellow-servant of plaintiff, it is insisted, caused the accident, but it admits of no dispute that the signal was displayed for the approaching train to cross, that the speed was reduced, and that when the train came on the blocking cars there was no preceding notice or light displayed, or flagman posted to make known the obstruction, and the current of the testimony is that the plaintiff's jump was in the presence of the imminent danger, verified by the quickly following collision. As to the injuries to plaintiff, the testimony of his physician and others is, that his leg was injured; that he was bruised, confined for a few days, received medical attention; but on a careful consideration of all the testimony on this point

we are not impressed with the tendency of the testimony to show permanent injury.

Our attention is directed to the testimony that after the suit was brought and plaintiff had testified, he sought defendants to obtain money, or a position on the road, and made statements he had sustained no injury and would withdraw his suit. We have his affidavit to the contrary, and the lower court was so impressed with the testimony that it declined to permit the plaintiff to go on the stand to testify to that which occurred. We have no power to dismiss the suit because of this episode. If plaintiff has any right to recover it depends on facts connected with the accident resting on testimony of others, and in weighing that relating to his injuries we shall be careful to give his statements no weight greater than the force suggested by the testimony coming from the physicians and others cognizant of the actual facts.

It is contended on behalf of defendants that this accident, occurring within yard limits extending a distance of eight hundred feet, is to be considered in connection with the alleged rules of the company authorizing the switching on the tracks in yard limits and in the night-time, of cars detached from the engine, without lights, signals, or notice of any kind to approaching trains and without instructions to those who must run trains, or to those who place such obstructions on the tracks, of the coming of the trains, that must eventually come in contact with the cars in the way. The rule contended for in argument is, in effect, that no other protection to the life and limbs of railroad employees of trains moving in the night-time, through yard limits, is required, to guard against obstructions on the tracks placed there by other employees, than the reduced speed at which the trains must run, or as the witnesses express it, such trains must be under control. Any other or further protection under the rule as it is presented in argument, must be found in the quickness of vision to see in the dark an obstructed track, and in stopping the train in the interval, however short, between perceiving and actual contact with the obstruction. The rule thus contended for, known, it is claimed, to plaintiff and all employees of the company, it is insisted, placed on him the risk of the accident, under the principle that the servant takes all the risks incident to his employment. Thompson on Negligence, p. 927; Bailey, Master and Servant, p. 152. The testimony fails to impress us that the rules of the defendant carried the signifi-

cance to their employees, of the assumption by them of the risk of night obstructions of the tracks even in the yard limits, with no lights displayed, or notice of any kind of such obstructions so menacing to life and limbs of train men.  That the trains should move at slackened speed ,through yard limits, testified to as the rule of the company, could hardly be deemed to carry the notice that train men required to pass over the tracks in the night-time, must expect to encounter impediments in the way, of a character to endanger their lives, and with no notice of warning of the danger.  Nor do we find the testimony supports the rule with the significance attached to it in the argument.  As we read the testimony of the defendants' witnesses we derive the impression that it was customary, when the main tracks in the yard limits were obstructed, to flag approaching trains, as we find it put by one of the witnesses "to send flags each way."  As to night obstructions there can not be said to have been any custom, for as we find it in effect from another of .defendants' witnesses, no such obstruction as cars left on the main track had occurred in the four years of his employment.  If customary to flag in the daytime obstructed tracks, manifestly the train men of this extra freight dispatched at night to pass through the yard limits, though at reduced .speed, might well deem themselves entitled to notice of the cars blocking their way and menacing their lives.  In our view the defence fails that presents the accident that resulted in plaintiff's injuries as one of the risks he assumed incident to his employment.

Again, when the servant is deemed to have assumed the risk of the accident causing the injury, the law supposes the master has complied with the obligations resting on him to secure the safety of the servant in performing his duties.  The failure of the master in this respect will leave him without defence on the ground of the servant's assumption of usual risks.  2 Thompson on Negligence, pp. 970, 985.  This obligation of the master in connection with the servant's assumption of risks has had frequent illustration, and as respects railroads, may be well applied; we think, to reasonable precautions to guard against obstructed tracks.  In this case we find as pertinent to the discussion that no notice is sent by the proper employees not fellow-servants of the plaintiff, to those in charge of the yard, of the coming of the extra freight that encountered the obstruction within an hour from the time it was dispatched at night, to pass over the

tracks; nor was any nticeo given by those not fellow-servants of plaintiff to those who dispatched the night train, of the cars placed on the track.   These notices were reasonable precautions not within the plaintiff's duties, and which, it is to be presumed, would have averted the accident.   Further, we have a freight train of thirty-four cars dispatched with but three air-brake cars, insufficient, it is our conclusion, to arrest in suitable time the train, if indeed the accident could have been avoided with a greater number of cars provided with air brakes.   We think in these aspects the negligence of the defendant is also exhibited.

It is claimed that it was the negligence of the engineer with whom the plaintiff was associated in the duty of running the engine that caused the discussion.   We pass over the authorities cited in the brief to show that the engineer was the fellow-servant of plaintiff, and in law the negligence of one was equally that of the other.   Accepting the legal conclusion, the inquiry remains what was the asserted negligence.   The canal bridge, crossed on entering the yard limits, it is claimed, called for a full stop.   We find, however, it was not crossed until the appropriate signal was given.   It is urged the movement of the cars through the yard should have been under the rules six or eight miles an hour.   The testimony of the engineer and conductor, most reliable, we think, was, the cars were moving at reduced progress, eight or ten miles an hour.   The difference between the asserted rule rate, and the actual movement, if any, in our opinion, based on the testimony, is not to be deemed a factor in causing the accident inevitable, we think, irrespective of the rate at which the cars were pulled.   In every point of view, we think the negligence of defendants must be deemed the cause of the contact, to avoid which plaintiff jumped from the engine, and the jump, under the circumstances, does not lessen defendants' responsibility more serious, it might well be, if plaintiff had awaited the actual contact that quickly followed.

This record affords no warrant for other than actual damages. Under the testimony it is our conclusion the plaintiff received no permanent injuries.   The pain he suffered, the loss of time during the period of his confinement, the expenses of medicines and medical attention make up the basis for damages.   In our opinion five hundred ($500) dollars is adequate compensation for his injuries.

It is therefore ordered, adjudged and decreed that the judgment of

the lower court be avoided and reversed, and it is now ordered, adjudged and decreed that the plaintiff do have and recover from the defendant five hundred dollars with legal interest and costs.